IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


KATIE F. WILSON          )
          )
     v.           )     NO.  3:06-0073
          )
STATE OF TENNESSEE      )


TO:    Honorable Robert L. Echols, District Judge


## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered February 1, 2006 (Docket Entry No. 3), the Court referred the above captioned action to the Magistrate Judge for frivolity review under 28 U.S.C. § 1915(e)(2) and for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B) and Rule 72(b) of the Federal Rules of Civil Procedure.

Presently pending before the Court is the State of Tennessee's  Motion for Summary Judgment (Docket Entry No. 37).  Plaintiff has filed a response in opposition (Docket Entry Nos. 43-44), and Defendant has filed a reply (Docket Entry No. 45).

For the reasons set out below, the Court recommends that the motion be granted and this action be dismissed.


## I. BACKGROUND

Plaintiff filed this action pro se and in forma pauperis under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 ("Title VII").  Plaintiff, who is African-American, alleges that she is being discriminated against at her workplace by her employer, the Tennessee Department of Finance and Administration ("F&A"), because of her race and in retaliation for her complaints about racial discrimination and for filing a charge of discrimination.

By Order entered August 30, 2006 (Docket Entry No. 5), process was issued to the State of Tennessee but the four other defendants named in the complaint[1] were dismissed. Thereafter, Defendant filed an answer (Docket Entry No. 8). By Order entered September 26, 2007 (Docket Entry No. 35), the Court denied Defendant's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pretrial activity has occurred in the action pursuant to a scheduling order (Docket Entry No. 9) and revised scheduling order (Docket Entry No. 29).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff began working for the State of Tennessee in 1976. On August 1, 2002, she was transferred to the Bureau of TennCare ("TennCare") as a Mental Retardation Program Specialist 3 in the Division of Long Term Care. Her duties included being the Complaint Coordinator for the division, which involved the intake and processing of complaints from TennCare enrollees regarding the services they are receiving.

During August of 2003, the Division of Long Term Care was divided into two separate divisions, the Division of Long Term Care ("LTC") and the Division of Developmental Disability Services ("DDS"), the latter of which employed Plaintiff after the split. Both divisions were under the supervision of Dr. Walton Moore ("Dr. Moore"), who had been the medical director for the previous Division of Long Term Care prior to the split of the division.

Plaintiff asserts that, subsequent to the split of the division, she was effectively given the job duties of two positions when Dr. Moore assigned to her the additional duties of assisting with assessment surveys performed by the DDS. This required her to make home visits along with other members of the assessment survey team. Plaintiff assisted with the assessment surveys until approximately January 2004, when her assistance was no longer needed because additional staff had been hired into the DDS. In February 2004, Dr. Moore assigned to Plaintiff the duties of

---

[1] The four dismissed defendants are the Department of Finance and Administration, the Bureau of TennCare, Dr. Walton Moore, and Pamela Bullard.

2

Investigations Coordinator. These duties had previously been performed by an employee who left employment in the DDS in that month. The duties consisted of monitoring and reviewing investigations performed by the Division of Mental Retardation Services ("DMRS") or DMRS providers.

During October 2003, Plaintiff was told by another employee that a nurse had used the word "nigger" in reference to TennCare enrollees. Plaintiff placed an anonymous note in the division's suggestion box stating "Why do the director allow employees to walk around the office using the 'N' word that's offensive towards other races of people?" See Docket Entry No. 41-1, at 6. At an employee meeting on October 20, 2003, the note was read and Plaintiff stated that the note was from the LTC but did not acknowledge that she had written the note. Upon Plaintiff's inquiry, she was assured that the employee who reported the issue would not suffer retaliation. David Schuster, the assistant director of operations for TennCare, was present at the meeting and requested to speak to Plaintiff after the meeting concluded. During that meeting, Plaintiff informed Mr. Schuster that she had written the note and had also confronted the nurse about it and had given her pages from a "Title VI book" to let her know that using such language was a violation. Id. at 11.

On April 22, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and retaliation. Specifically, Plaintiff alleged:

> I. Since October 29, 2003 until the most recent incident of April 19, 2004, I have been omitted and not allowed to do my job as mental retardation waiver complaint/investigation coordinator. I have been employed with the State of TN since October 1, 1976 and with the Bureau of TennCare since August 1, 2002. The bureau employs about 750 individuals.
>
> II. Dr. Louis Moore, my director, informed me that he would no longer need me to do surveys stating that I have a supervisor who will be the sixth person for the team.
>
> III. I believe I have been discriminated against due to my race, Black, and retaliated against for reporting an incident of racial statements, in violation of Title VII of the Civil Rights Act of 1964, as amended.

See Attachments to Complaint.

Plaintiff thereafter filed, on July 20, 2004, a second charge of discrimination with the EEOC alleging discrimination based upon retaliation. In her second charge, she alleged:

> I. I began working for the State of Tennessee on October 1, 1976. Effective August 1, 2002, I began working for the Tennessee Department of Finance & Administration, Bureau of TENNCARE, Nashville, TN. I have been retaliated against for filing a Charge of Discrimination with the EEOC. They employ over 15 employees.
>
> II. On April 22, 2004, I filed a Charge of Discrimination with the EEOC, Charge # 253-2004-01964, wherein I complained for workplace discrimination and retaliation for complaining of this discrimination. Since filing the Charge of Discrimination, I have been retaliated against. I continue to have my work assignments changed unilaterally, only now major portions of my position are being removed from my responsibility. Also, I am now being subjected to different Terms & Conditions of Employment, in retaliation for complaining of discrimination. I am being left out of meetings, and information key to my successfully accomplishing my primary duties is being kept from me. Also, I was denied training upon my initial request to attend. I, alone, had to justify my need to attend this training, in retaliation for complaining of workplace discrimination. I continue to be harassed in retaliation for complaining of workplace discrimination, which creates a hostile work environment.
>
> III. I feel that I have been discriminated against and retaliated against for complaining of workplace discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

See Attachments to Complaint.

Plaintiff asserts that she received a right-to-sue letter on October 14, 2005. See Complaint at 3. Her complaint was received by the Court on January 12, 2006, and was file-stamped on February 1, 2006, after Plaintiff was granted in forma pauperis status. See Docket Entry No. 3.

In her complaint, Plaintiff alleges four specific claims under Title VII:

1. Removal of job duties as the MR Waiver Complaint Coordinator;

2. Placed undue stress on me, when assigning me to two positions (Complaints and Investigations) without compensation;

3. Remove me from participating in the unit of the entire group; and

4. Wrote a job description for me and no other staff in my Division received a job plan or evaluation. Plus, he refused to sign or date the document and wrote "no travel" to prevent me from report (sic) fraud of enrollee's funds.

See Complaint at 3.

Subsequent to filing her complaint, Plaintiff has made additional allegations of wrongdoing on the part of Defendant, although she has not sought to amend her complaint to include such allegations. For example, in response to Defendant's motion to dismiss, Plaintiff filed, on October 24, 2006, a document entitled "Evidences of Discrimination and Retaliation of State Employee" (Docket Entry No. 13) and attached a large number of copies of records from her workplace (Docket Entry Nos. 14-15). Because it was unclear exactly what Plaintiff's filings were intended to show, the Court advised Plaintiff, by Order entered November 6, 2006 (Docket Entry No. 18), that her action was limited to Title VII claims of racial discrimination and retaliation and that, to the extent that Plaintiff was making allegations of other wrongdoing by her employer, such allegations are not a part of this action.[2]

Additionally, on March 30, 2007, Plaintiff filed a document entitled "Medical Treatment/Change of Resident Continued Evidences of Harassment and Retaliation of State Employee" (Docket Entry No. 30), in which she complained about a letter of warning she received from her employer, dated January 11, 2007, and an interim work review, dated February 22, 2007. She contends that letter of warning was issued as retaliation for filing documents with the Court on October 26, 2006,[3] and contends that the work review was an act of retaliation against her for filing the instant lawsuit and for reporting workplace harassment to the "administration." See Docket Entry No. 30 at 1.

_____

[2] For example, Plaintiff stated that she had become a "whistle blower" in 2003 by reporting incidents of retaliation, fraud, and abuse by employees and that only she was forced to "accept the unofficial job description written as retaliation for informing the administration of abuse of service recipients' funds and food stamps by staff in Provider Agencies." See Docket Entry No. 13 at 1-2.

[3] The letter of warning reprimanded Plaintiff for releasing documents which contained protected health information about TennCare enrollees without their consent in violation of HIPAA regulations and TennCare policies.
Defendant moved to seal the records filed by Plaintiff, and by Order entered November 13, 2006 (Docket Entry No. 21), the Court temporarily sealed the records. By Order entered September 5, 2007 (Docket Entry No. 32), the Court permanently sealed a portion of those records as designated by Defendant.

### III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendant argues that summary judgment should be granted because Plaintiff cannot present a prima facie case under Title VII. Defendant contends that Plaintiff fails to set forth evidence showing that she suffered an adverse employment action or that she was treated differently from similarly situated co-workers who were not in the protected class. Defendant further argues that, even if Plaintiff has made out a prima facie case, it has set forth legitimate and non-discriminatory reasons for any adverse action taken against Plaintiff. Defendant argues that Plaintiff's retaliation claim suffers from similar shortcomings and Plaintiff cannot support a prima facie case of retaliation. Finally, Defendant contends that Plaintiff's complaint was not timely filed as it was filed more than 90 days after Plaintiff's receipt of the right-to-sue letter. Defendant supports its motion with the affidavit of Walton Louis Moore (Docket Entry No. 40) and with excerpts from Plaintiff's deposition (Docket Entry No. 41).

Plaintiff filed a short response (Docket Entry No. 43), in which she complains about what she alleges are continued acts of retaliation against her related to her taking a medical leave of absence from employment and TennCare's notice to her in October 2007, that her employment was being terminated because of her long-term absence from work due to personal illness and the exhaustion of all benefits relating to sick leave. She also filed a combined affidavit and response (Docket Entry No. 44) to Defendant's statement of undisputed material facts, and several pages of photocopied letters, e-mails, policies, and other documents related to her employment with Defendant.

### IV. STANDARD OF REVIEW

Summary judgment is warranted in favor of one party if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Rule 56(c) of the Federal Rules of Civil Procedure; Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The ultimate question to be addressed is whether

6

there are any genuine issues of disputed material fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If genuine issues of material fact do not exist, summary judgment is appropriate.

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. However, the nonmoving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting her claims and establishing the existence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 324; Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Liberty Lobby, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative" or is not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Liberty Lobby, 477 U.S. at 249-52.

7

# V. LEGAL ANALYSIS

## I. Timeliness of the Complaint

Defendant asserts that the right-to-sue letter was mailed on October 4, 2005, but the instant complaint was not filed until January 12, 2006, one hundred days later. Therefore, Defendant contends the complaint was not brought within the required ninety (90) days after Plaintiff's receipt of the right-to-sue letter. Defendant argues that the Court should disregard Plaintiff's statement that she did not receive the right-to-sue letter until October 14, 2005,[4] because "she has produced no evidence that would substantiate this claim," see Docket Entry No. 38 at 19, and should instead apply the presumption that the complaint was received on the fifth day following mailing by the EEOC, which would render the complaint untimely.

The Court does not find Defendant's argument to be persuasive. First, Plaintiff's statement that she received the right-to-sue letter on October 14, 2005, is, in fact, evidence substantiating her claim of the date when she received the letter.[5] Defendant relies on Banks v. Rockwell, 855 F.2d 324 (6th Cir. 1985), to support its argument. However, Banks does not compel the Court to apply the five day presumption in the face of a plaintiff's statement of a date certain when she received the right-to-sue letter. Banks involved a situation in which it was undisputed that the plaintiff had not received the right-to-sue letter because he had moved to a new address and had failed to inform the EEOC of his new address.

Second, the right-to-sue letter indicates that it was sent by certified mail. See Attachments to Complaint. Thus, Defendant should have been able to find out exactly when Plaintiff received the right-to-sue letter and should have supported its argument with such evidence.

---

[4] Defendant indicates that Plaintiff asserts that she received the right-to-sue letter on October 12, 2005. However, Plaintiff clearly states in her complaint that she received the letter on October 14, 2005. The Court assumes that Defendant's use of October 12, 2005, is merely a typographical error.

[5] Plaintiff states that she received the right-to-sue letter upon returning from vacation. See Docket Entry No. 43 at 1-2.

8

**II. Racial Discrimination Claim**

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . race." See 42 U.S.C. § 2000e-2(a)(1). In order to prevail on her claim that she was disparately treated because of her race, Plaintiff "must offer direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." Johnson v. Kroger Co., 319 F.3d 858, 864-65 (6th Cir. 2003); Blalock v. Metals Trades, Inc. 775 F.2d 703, 707 (6th Cir. 1985).

With respect to direct evidence of racial discrimination, the Sixth Circuit has explained "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp., 176 F.2d 921, 926 (6th Cir. 1999). "Direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson, 319 F.3d at 865. In the instant action, Plaintiff has not identified any direct evidence of racial animus supporting her claim that she was discriminated against because of her race.

Accordingly, in the absence of direct evidence supporting her claim, Plaintiff's claim is analyzed under the evidentiary framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1972), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981). Once Plaintiff has established a prima facie case of discrimination under this framework, Plaintiff creates a rebuttable presumption of unlawful discrimination and the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for the challenged action. Burdine, 450 U.S. at 254-56. Upon Defendant's offer of a legitimate reason, the burden shifts back to Plaintiff to demonstrate that Defendant's reason is pretextual, masking intentional discrimination. Dews v. A.B. Dick Co., 231

9

F.3d 1016, 1021 (6th Cir. 2000). Plaintiff can demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to warrant the challenged conduct. Id. The ultimate burden of persuasion always remains with Plaintiff. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 517-18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Id. at 502.

A. Prima Facie Case

To establish a prima facie case, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) that a similarly situated person outside the protected class was treated differently or more favorably than she was treated. See Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006); DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004); Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995); Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir. 1992).

Defendant does not contest the first and third elements of Plaintiff's prima facie case, but argues that Plaintiff fails to show that she suffered an adverse employment action and that she was treated differently than similarly situated employees who were outside the protected class.

The crux of Defendant's argument that Plaintiff cannot show an adverse employment action is that the employment practices about which Plaintiff complains -- being assigned additional work duties, having existing work duties removed, changed, or limited, being excluded from meetings, and having a written job description implemented for her position –- do not constitute adverse employment actions for the purposes of a Title VII claim.

The Court agrees. In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the United States Supreme Court held that an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

10

524 U.S. at 761. The challenged employment action must amount to a "materially adverse change in the terms or conditions of . . . employment." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885-86 (6th Cir. 1996). The complained about action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id.

While there is no set definition of what constitutes an adverse employment action and each situation is controlled by its own facts, the Sixth Circuit Court of Appeals has consistently required that the challenged employment action be significant in order for it to be deemed materially adverse. This requirement is designed to prevent lawsuits which are based upon trivial workplace dissatisfactions. White v. Burlington Northern & Santa Fe Railway. Co., 364 F.3d 789, 795 (6th Cir. 2004), aff'd Burlington Northern & Sante Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). For example, the Sixth Circuit has found that a plaintiff fails to show an adverse employment action based upon evidence of a temporary job reassignment which did not result in a reduction of pay or benefits or change of working hours, Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987); evidence of a substantial reduction of lab space, revocation of mentor status, loss of a research assistant, forced review of grant applications, removal from directorship position, and non-selection for a lateral position, Mitchell v. Vanderbilt University, 389 F.3d 177, 181-83 (6th Cir. 2004); evidence of a low performance evaluation which did not have an effect on the plaintiff's wages, Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999); evidence of a temporary removal from a supervisory position which did not affect employment status or salary, Bowman v. Shawnee State Univserity, 220 F.3d 456, 461-62 (6th Cir. 2000); evidence that an employee was required to comply with a performance plan, Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002); evidence that plaintiff had to work at home and had reimbursement for expenses denied when requests had been previously approved, Jacklyn, 176 F.3d at 930; evidence of confrontation and harsh words from supervisor, that employee was required to turn in her laptop computer, and that employee was briefly placed on paid administrative leave, Michael v. Caterpillar Financial Services Corp., 496 F.3d 584, 594 (6th Cir. 2007); evidence of increased scrutiny of

11

plaintiff's work, <u>Birch v. Cuyahoga County Probate Court,</u> 392 F.3d 151, 169 (6th Cir. 2004). <u>See also</u> <u>Peake v. Brownlee</u>, 339 F. Supp. 2d 1008, 1022 (M.D. Tenn. 2003) (plaintiff's allegations that she was assigned to a different building, left out of meetings, ignored by her supervisors, and not permitted to attend training sessions did not show adverse employment actions).

In the instant case, Plaintiff has not set forth evidence of any action taken in her workplace which can be reasonably viewed as a materially adverse action. There is no evidence that she was demoted, suspended, faced disciplinary action, or had her pay or benefits changed in any manner that was detrimental to her. In essence, her complaints center around the management practices of Dr. Morris and his involvement in the her work duties, either through assignment to her of extra duties or the removal of or limitation of certain duties Plaintiff was already performing.

Plaintiff's assertion that she was "assigned two full-time positions, which was a violation of Title VII," <u>see</u> Docket Entry No. 44 at § 12, is a conclusion on her part and fails to set forth evidence showing that the assignment of extra duties caused her to suffer a material adverse change in her employment situation. The extra duties assigned to Plaintiff were within the scope of her work and there is no evidence that she was assigned demeaning or degrading duties which were unrelated to her employment position with TennCare. Nor is there any evidence that the extra duties in any way caused a specific hardship to her in terms of extended working hours or working commute or that the extra duties caused her job to become more demanding or materially more difficult. <u>Cf.</u> <u>Burlington Northern</u>, <u>supra</u> (job transfer from forklift operator to track laborer amounted to materially adverse employment action because the new position was more arduous, dirtier, and less prestigious and amounted to a practical demotion).

There is also no evidence that the removal of some of her workplace duties left her with only duties that were outside the sphere of her employment or which rendered her essentially meaningless within her position at TennCare. The mere fact that her job responsibilities were disrupted or changed does not create a materially adverse employment action. <u>See</u> <u>Kocsis,</u> 97 F.3d at 886. Plaintiff obviously was dissatisfied with changes Dr. Moore implemented regarding operations

12

within the DDS and believed these changes to be unwarranted and unsound, but her personal disagreement with these changes does not render them materially adverse. See Policastro v. Northwest Airlines, 297 F.3d 535, 539 (6th Cir. 2002) ("[A]n employee's subjective impressions as to the desirability of one position over another are not relevant.").

Plaintiff complains that she was not allowed to attend meetings of the survey team and that a written job description was implemented for her position. However, she has made no attempt to show the Court how these two actions could reasonably constitute materially adverse employment actions.

The Court also finds that Plaintiff fails to satisfy the fourth prong of her prima facie case. In order to satisfy the fourth element of a prima facie case, a plaintiff is required to show that one or more other similarly situated non-minority employees were treated differently. To establish this "similarity," the plaintiff is "required to prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (citing Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)). Determining whether the plaintiff and another employee are similarly situated requires evaluation of the specific factual context raised by the plaintiff's claim. This may include consideration of whether or not the plaintiff and the other employee dealt with the same supervisor or, in the case of disciplinary action, whether they were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. See Mitchell, 964 F.2d at 583; Smith v. Leggett Wire Co., 220 F.3d 752, 762-63 (6th Cir. 2000). This determination may also include comparison of other aspects of a plaintiff's employment if the plaintiff's position is unique. See Jackson v. FedEx Corporate Services, Inc., 518 F.3d 388, 392-97 (6th Cir. 2008).

In the instant action, Plaintiff has not identified any actual employee outside the protected class with whom she was similarly situated but whom she believes was treated differently than she

was treated by her employer. Despite Plaintiff's having filed voluminous documents with the Court and being clearly notified of the requirements of her <u>prima facie</u> case by Defendant's motion for summary judgment and supporting memorandum, Plaintiff has not set forth any comparable employee and continues to argue her claim of differing treatment in general and conclusory terms. <u>See</u> Docket Entry No. 44 at ¶¶ 5 and 12. The Sixth Circuit has repeatedly held that "rumors, conclusory allegations and subjective beliefs" are insufficient to establish a claim of discrimination as a matter of law." <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 585 (6th Cir. 1992).

## B. Legitimate, Non-discriminatory Reasons and Pretext

Even if the Court were to assume that Plaintiff has satisfied her <u>prima facie</u> case, the Court finds that Plaintiff fails to set forth evidence showing pretext on the part of Defendant.

By his affidavit (Docket Entry No. 40), Dr. Moore sets forth legitimate, non-discriminatory reasons for each of the employment actions about which Plaintiff complains. He asserts that the alterations in Plaintiff's work duties occurred as a result of the reorganization of the Division of Long Term Care, staffing shortages and changes, office restructuring, and the fact that Plaintiff's pre-existing work duties made her familiar with the newly assigned duties. <u>Id</u>. at ¶¶ 5-11 and 14-19. He asserts that any duties assigned to Plaintiff which were associated with the state assessment surveys were of a temporary nature and were removed when the staffing situation was resolved. <u>Id</u>. He also asserts that the written job description was provided in order to clarify Plaintiff's job duties. <u>Id</u>. at ¶ 21.

To establish pretext, Plaintiff must demonstrate "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 576 (6th Cir. 2003) (quoting <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1021 (6th Cir. 2000)); <u>Manzer v. Diamond Shamrock Chems. Co.</u>, 29 F.3d 1078, 1084-85 (6th Cir. 1994).

14

The Court has reviewed Plaintiff's affidavit (Docket Entry No. 44), which she submitted in response to Defendant's statement of undisputed material facts, and finds that Plaintiff fails to satisfy her burden of showing pretext. While Plaintiff disagrees with how Dr. Moore managed the DDS and may believe that his management practices were unsound, unfair, unproductive, and/or contrary to state or TennCare policies, this Court does not sit as an oversight board to review the correctness of employment and management practices or decisions. See Smith v. Leggett Wire Co., 220 F.3d at 763. See also Manzer, 29 F.3d at 1084-85 (6th Cir. 1994). The soundness of an employer's decision is not a matter of concern under Title VII as long as the employer has not made decisions based on grounds forbidden by federal law. See Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006). The only question at issue under Title VII is whether the employer treated an employee less favorably than others because she was a member of a protected class. General questions about whether an employee was treated fairly or justly are simply not within the scope of the protection offered under Title VII.

Plaintiff has not shown that the proffered explanations for the challenged employment actions were factually false, that Dr. Moore did not have an honest belief in the factual basis for the actions, or that the sheer weight of circumstantial evidence makes it more likely than not that Dr. Moore's explanations were a pretext and masked a discriminatory animus on his part. See Abdulnour v. Campbell Soup Supply Co., LLC, 502 F.3d 496, 502-03 (6th Cir. 2007). Plaintiff has also not set forth any evidence of racially hostile remarks or actions on the part of Dr. Moore which could be viewed as indicia of a racial animus. See Vincent v. Brewer Co., 514 F.3d 489, 497-98 (6th Cir. 2007) (numerous and specific degrading comments about females and female employees could serve as evidence supporting a claim of pretext for gender discrimination).

Plaintiff's claim that she was discriminated against because of her race is based entirely upon her own subjective belief, and she has thus failed to provide evidence raising a genuine issue of material fact to meet her ultimate burden of showing intentional discrimination. See Bell, 351 F.3d at 253; Manzer, 29 F.3d at 1082-84. Given the lack of any supporting evidence in her favor, no

15

reasonable jury could find in Plaintiff's favor on her claim of racial discrimination in her workplace. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (summary judgment is appropriate if the plaintiff only creates "a weak issue of fact as to whether the defendant's reason was untrue" and there is ample evidence to support the employer's position).

## III. Retaliation Claim

Title VII forbids an employer from "discriminat[ing] against any . . . employee[s] . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII.]" 42 U.S.C. § 2000e-3(a). Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2. See Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 543 (6th Cir. 2008).

Plaintiff alleges that she was initially retaliated against because of the written note she submitted in October 2004, complaining about another employee's use of the word "nigger" and contends that she has continued to be retaliated against because of her filing of the two EEOC charges of discrimination.

In a similar manner to a plaintiff who is pursuing a claim of racial discrimination under Title VII, a plaintiff who is raising a claim of retaliation under Title VII may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation. DiCarlo, 358 F.3d at 420.

Plaintiff does not set forth any direct evidence of retaliation, such as an explicit statement that actions were taken against her due to her engaging in a protected activity. Such evidence, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the

16

challenged action on the part of Defendant. <u>Abbott v. Crown Motor Co.</u>, 348 F.3d 537, 542 (6th Cir. 2003).

Instead, Plaintiff's claim is advanced as a circumstantial case for retaliation in which the retaliation claim is analyzed under the same <u>McDonnell Douglas</u>/<u>Burdine</u> evidentiary framework that is used to assess claims of discrimination. <u>Wrenn v. Gould</u>, 808 F.2d 493, 500 (6th Cir. 1987) (applying <u>McDonnell Douglas Corp. v. Green,</u> 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to a retaliation claim). Thus, in order to establish a retaliation claim, Plaintiff must prove: (1) she engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to Defendant; (3) Defendant thereafter took adverse employment action against Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. <u>See</u> <u>Morris v. Oldham County Fiscal Court</u>, 202 F.3d 784, 792 (6th Cir. 2000). "If and when a plaintiff has established a <u>prima</u> <u>facie</u> case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." <u>Id</u>. at 792-93 (citation omitted).

Upon Defendant's offer of a legitimate reason, the burden shifts back to Plaintiff to demonstrate that Defendant's reason is pretextual, masking intentional discrimination. <u>Virts v. Consolidated Freightways Corp.</u>, 285 F.3d 508, 521 (6th Cir. 2002); <u>Dews</u>, <u>supra</u>. Plaintiff can demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to warrant the challenged conduct. <u>Virts</u>, <u>supra</u>. The ultimate burden of persuasion always remains with Plaintiff. <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 511 and 517-18.

A. Protected Activity

The first part of Plaintiff's prima facie case requires her to show that she engaged in a protected activity. To the extent that she alleges that she was retaliated against for filing the two charges of discrimination with the EEOC and participating in any investigation which occurred as a result of those charges of discrimination, she has clearly engaged in protected activity under the "participation" component of protected activity because Title VII broadly protects an employee's participation "in any manner in an investigation, proceeding, or hearing under ... [Title VII]." 42 U.S.C. § 2000e-3(a); Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 -543 (6th Cir. 2003).[6]

Whether Plaintiff's submission of the anonymous note constitutes protected activity is less clear. Contrary to Defendant's argument that this activity should be analyzed under the participation clause of Section 2000e-3(a), see Defendant's Memorandum in Support (Docket Entry No. 38) at 16, this activity on the part of Plaintiff is more properly viewed within the scope of the opposition clause of Section 2000e-3(a). Under the opposition clause, an employee's opposition of an unlawful employment practice constitutes protected activity even if the opposition is unrelated to or precedes formal EEOC proceedings. See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989) (explaining differences in protected activity in the context of suit brought under Michigan's anti-discrimination act); Holden v. Owens-Illinois, Inc., 793 F.2d 745, 748 (6th Cir. 1986).

The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings. Booker, supra. The opposition clause "does not protect all 'opposition' activity." Holden, 793 F.2d at 751. The act of

_____

[6] Defendant limits Plaintiff's assertion of protected activity to her submission of the anonymous note in October 2003, and fails to address her filing of the two charges of discrimination with the EEOC. While it is clear that Plaintiff believes that her submission of the note was protected activity, it is also clear from her her filings in this action and from the complaint itself that she is alleging that she was retaliated against because she filed a charge of discrimination. See Complaint (Docket Entry No. 1) at 3.

18

opposition must be specific and must be directed at unlawful acts on the part of the employer. <u>See</u> <u>Fox v. Eagle Distributing Co., Inc.</u>, 510 F.3d 587, 591 -592 (6th Cir. 2007). In finding that an employee's letter to his employer complaining about his supervisor's racially intolerant remarks and "ethnocism" was not a protected act, the Sixth Circuit explained:

> a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination.

<u>Booker</u>, 879 F.2d at 1313. <u>See also</u> <u>Willoughby v. Allstate Ins. Co.</u>, 104 Fed. Appx. 528, 531 (6th Cir. 2004) (rejecting claim that letter sent preceding retaliation constituted protected activity where letter made vague references to unhappiness among Caucasian employees).

In the instant case, the Court finds that Plaintiff did not engage in protected activity by submitting the anonymous letter to her employer in October 2003. First, the note was anonymous, it was not given to the human resources department or any management official but was merely placed in a suggestion box, it made no reference to any specific incident or date, it made no reference to any specific employee who had been allegedly treated unlawfully, and it made no reference to any specific supervisor or management employee who had acted unlawfully. As such, the Court finds that the note fails to rise above the level of the kind of vague complaint which does not qualify as opposition to an unlawful employment practice.

Second, the note itself only generally alleges that another employee was allowed to use "the 'N' word" and does not complain that Defendant was alerted to such activity yet permitted it to continue or routinely ignored such activity. As such, the activity complained about in the note falls into the category of a complaint about an isolated racial slur by a co-worker. Such a complaint is not opposition protected by Title VII. <u>See</u> <u>Jordan v. Alternative Resources Corp.</u>, 467 F.3d 378, 380 (4th Cir. 2006).

B. Defendant's Knowledge of Protected Activity

Plaintiff's first EEOC charge of discrimination was filed on April 22, 2004. While there is no evidence before the Court of when Defendant first became aware of Plaintiff's filing of the charge of discrimination, it is reasonable to believe that Defendant obtained knowledge of the complaint contemporaneously with Plaintiff filing the charge. The same would hold true for the second charge of discrimination filed by Plaintiff on July 20, 2004.

Although the Court finds that the anonymous letter submitted by Plaintiff was not protected activity, the Court nonetheless notes that Plaintiff has offered no evidence disputing Dr. Moore's statement that he was unaware that Plaintiff had submitted the note until after he learned of it through her EEOC charge of discrimination. See Affidavit of Dr. Moore (Docket Entry No. 40) at ¶¶ 12-13. Plaintiff asserts that Dr. Moore had knowledge as evidenced by a statement in a letter written by Carolyn Hilliard to Commissioner Dave Goetz. See Plaintiff's Affidavit/Response (Docket Entry No. 7) at ¶¶ 24-25. However, Plaintiff's evidence fails to support her claim in two respects. First, the content of the letter concerning what the letter writer said is unsworn hearsay and is inadmissable. Second, the statement in the letter fails to show that Dr. Moore had knowledge that Plaintiff had submitted the anonymous note. The letter merely recounts a discussion the letter writer alleges she had with Dr. Moore but there is no mention of Plaintiff or the letter submitted by Plaintiff.

C. Adverse Action

In Burlington Northern, the United States Supreme Court clarified the definition of an "adverse employment action" in the context of a retaliation claim and held that a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context. Burlington Northern, 126 S.Ct. at 2415. A materially adverse employment action in the retaliation context consists of any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quotation marks

omitted). This more liberal definition permits actions which would not be materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context. Id. at 2415-16; Michael, 496 F.3d at 595-96.

Given this lessened burden, the Court finds that, for the purposes of this motion, Plaintiff's complaints about altered work duties could arguably suffice to satisfy the adverse action requirement. However, the Court finds that the actions about which she complains - being excluded from a meeting and having a written job description generated for Plaintiff's position - still do not rise to the level of adverse employment actions even under the lowered standard required for a retaliation claim.


D. Causal Connection

Plaintiff fails to establish a causal link between the adverse activity about which she complains and the charges of discrimination. Plaintiff may seek to show causation through either direct or circumstantial evidence. Shramm v. Slater, 105 Fed. Appx. 34, 41 (6th Cir. 2004). Plaintiff has no direct evidence supporting a claim of a causal connection. In order to rely on circumstantial evidence to show a causal connection, Plaintiff must show "a temporal connection coupled with other indicia of retaliatory conduct." Randolph v. Ohio Dept. of Youth Services, 453 F.3d 724, 737 (6th Cir. 2006); Little v. BP Exploration & Oil Co., 265 F.3d 357, 364 (6th Cir. 2001).

Initially, the Court notes that there is no causal connection for any of the challenged employment actions which occurred prior to the April 22, 2004, filing of Plaintiff's first charge of discrimination. As the Court has found herein, Plaintiff had not engaged in any protected activity prior to the filing of her charge of discrimination and, thus, any of the challenged actions occurring prior to April 22, 2004, cannot be linked to any protected activity for the purposes of a retaliation claim.

While Plaintiff may be able to show a temporal connection between some of the latter challenged employment actions and the filing of her charges of discrimination given that some of

Case 3:06-cv-00073   Document 46   Filed 04/17/08   Page 21 of 23 PageID #: 1823

these actions occurred during the same time frame as her EEOC charges, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence. Randolph, supra; Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000). Plaintiff fails to show a causal connection because she has presented no compelling evidence of any other indicia of retaliatory conduct on the part of Defendant. As the Sixth Circuit Court of Appeals held in Little, there must be other evidence of retaliatory conduct, along with the temporal connection, in order to satisfy the causal connection requirement of a prima facie case of retaliation. Little, 265 F.3d at 364. Plaintiff has simply not presented such evidence.

## IV. ADDITIONAL CLAIMS MADE BY PLAINTIFF

As noted above, Plaintiff has made numerous additional allegations of wrongdoing on the part of Defendant which are not included in either her complaint, an amended complaint, or, it appears to the Court, in any type of charge of discrimination. These allegations appear to encompass every objectionable action which has occurred to Plaintiff in her workplace from 2005 to the present. These allegations include claims which go beyond the scope of Title VII since they involve Plaintiff's belief that she is being treated unlawfully because she is a "whistle blower." Furthermore, one of her more recent filings (Docket Entry No. 30) concerns difficulties she has encountered regarding leave from her employment due to medical problems from which she is suffering and disciplinary action instituted against her because of her release of protected information.

While the scope of a lawsuit can be expanded from the original claims made in a plaintiff's complaint when appropriate, the Court fails to see any benefit to be gained from addressing the additional, unpled allegations made by Plaintiff. If Plaintiff wishes to pursue legal claims based upon these events, she should do so via a separately filed lawsuit.

22

# R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion for Summary Judgment (Docket Entry No. 37) be GRANTED and this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge

Case 3:06-cv-00073   Document 46   Filed 04/17/08   Page 23 of 23 PageID #: 1825